(No. 11392.—Decree affirmed.)
LAURA SAMPLE, Appellee, vs. VIRGINIA B. GEATHARD,
Appellant.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. DEEDS—*presumption of delivery of deed to child, with res-
ervation of life estate in parent, is rebuttable.* The presumption
that a deed has been delivered where it is a voluntary settlement
by a parent upon a child and contains a reservation of a life estate
in the parent may be rebutted by proof of facts showing that it
was not the intention of the grantor to deliver the deed.

2. SAME—*merely handing a deed to grantee does not, of itself,
constitute delivery.* The mere placing of a deed in the hands of the
grantee with the request that she read it, does not, of itself, consti-
tute a delivery unless it was so intended by the parties at the time.

APPEAL from the Circuit Court of Sangamon county;
the Hon. FRANK W. BURTON, Judge, presiding.

SAMPSON & GIFFIN, for appellant.

G. W. MURRAY, and A. G. MURRAY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Laura Sample, appellee, filed her bill in the circuit court
of Sangamon county to set aside a deed executed by her
father, Joseph D. Cloyd, March 28, 1912, and recorded
July 17, 1916, subsequent to the death of Cloyd, conveying
to Virginia B. Geathard certain real estate in the city of
Springfield on North Fourth street, and which was occupied
by the grantor, during his lifetime, as his homestead. Mrs.
Geathard answered and filed a cross-bill, in which she sought
to have set aside as a cloud upon her title a deed dated
March 5, 1914, and recorded March 7, 1914, conveying the
same premises to Mrs. Sample. The only question to be
determined is whether the deed to Mrs. Geathard was ever
delivered.

Mrs. Geathard and Mrs. Sample were both children of Joseph D. Cloyd. Desiring to make a settlement and distribution of his property among Mrs. Sample, Mrs. Geathard and his other children, Cloyd called upon B. Galligan, his attorney, and consulted him with reference to making the necessary deeds. He owned some real estate in the city of Springfield aside from the homestead, and some farm land in Christian county. Galligan testifies that Cloyd called upon him several times and talked about dividing his property among his children, stating that he did not desire to make a will. He inquired if he could make deeds and keep them until he thought he was going to die and then call in his children and deliver the deeds to them. He was informed that that could be done and he stated that was what he would do. Galligan prepared the deeds to the Springfield real estate, and Cloyd brought him deeds for the farm lands in Christian county, which had been prepared in Taylorville, and requested Galligan to bring his notarial seal to Cloyd's home and take the acknowledgments. Cloyd's wife signed the deeds by mark, and her signature to the deed to Mrs. Geathard for the homestead property was witnessed by A. D. McNamara, a son-in-law of the Cloyds. Galligan testified that Mrs. Geathard was present at the time of the acknowledgment of the deeds, which were executed March 28, 1912, and that at that time Cloyd picked up the deed which conveyed the homestead to Mrs. Geathard and said to her, "Virginia, this is the deed what you wanted," and handed her the deed. McNamara testified that on this occasion he witnessed the signature of Mrs. Cloyd to two or three of the deeds, and that while there Cloyd stated to him that he intended to keep the deeds until the proper time came,—when he got sick or thought he was through with them,—and then he would call his children together and give each one his deed, and that he would have each deed in an envelope to itself and hand them out to the children. Mrs. Geathard testified that on this occa-

sion Galligan brought the deeds to the house, and after they had been acknowledged her father took them, laying them across his knee, and separated them until he came to the one which conveyed the homestead premises to her, read it and handed it to her, stating, "There, read that; that is yours;" that she read it while he was looking over the other deeds, and when she had finished reading it he asked her how that suited her, and she answered that it was all right,—that if it suited him it suited her; that he then told her to take care of the place and remember how she got it, and she responded that he could trust her to take care of whatever came to her; that he responded, "Yes, I know it;" that he then said, "I will take care of that for you," and she handed the deed back to him, and that he thereupon took the deed and placed it with others in a tin box which he used to keep his private papers in. None of the deeds were exhibited to any of the other children but were kept in the tin box until some time during the year 1914, when he discovered that the deeds were missing and supposed them to be lost or stolen. He thereupon employed Galligan to prepare another set of deeds to his children in which some changes were made in his scheme of settlement. By the second set of deeds the homestead property was conveyed to Mrs. Sample upon condition that she pay Mrs. Geathard $260. Cloyd recorded the second set of deeds and thereafter delivered them to his children. Mrs. Cloyd died June 8, 1915, and Cloyd died July 12, 1916. After his death the deed of March 28, 1912, to Mrs. Geathard for the homestead property was found among his papers in the tin box referred to. Mrs. Geathard secured possession of the deed and placed it on record. Mrs. Geathard is a widow, and was making her home with her father at the time of his death. As she claimed to own this property by virtue of this deed she refused to deliver up possession of the premises, and Mrs. Sample filed her bill to have the deed set aside as a cloud on her title. The cause was referred

281 – 6

to the master in chancery, who found that the deed to Mrs. Geathard had never been delivered, and recommended that the cross-bill of Mrs. Geathard be dismissed and that a decree be entered in accordance with the prayer of the original bill. Exceptions to the master's report were overruled and a decree entered in accordance with the recommendation of the master.

The deed to Mrs. Geathard and each of the other deeds executed on March 28, 1912, reserved a life estate in Joseph D. Cloyd and his wife and the survivor of them. Mrs. Geathard relies upon the presumption of law in favor of the delivery of a deed in case of a voluntary settlement by a parent upon a child in which there is a reservation of a life estate to the parent, and also upon what she claims to have been an actual delivery of the deed. While the presumption is that a deed has been delivered in case of a voluntary settlement by a parent upon a child in which there is a reservation of a life estate in the parent, this presumption may be rebutted by showing that it was not the intention of the grantor to deliver the deed. This presumption is applied and the validity of a deed upheld only in cases where there are no circumstances to show that the grantor did not intend the deed to operate immediately. (*Cline* v. *Jones,* 111 Ill. 563; *Shovers* v. *Warrick,* 152 id. 355; *Riegel* v. *Riegel,* 243 id. 626.) The mere placing of a deed in the hands of the grantee does not, of itself, constitute a delivery. In such cases the inquiry is, what was the intention of the parties at the time?—and that intention, when ascertained, must govern. (*Wilson* v. *Wilson,* 158 Ill. 567.) It appears from the testimony of Mrs. Geathard that a few weeks prior to the execution of the deed of March 28, 1912, she learned that her father had executed a deed conveying to her a life estate in the homestead property. Upon learning of this she discussed the matter with her father and expressed her displeasure with that form of conveyance, informing him that she did not

think it was fair for him to make such a discrimination between her and her brothers and sisters simply because she happened to be childless. She admits that she plainly expressed her displeasure to her father as to such a provision for her. This incident affords some explanation of the fact that her father handed her the deed he had executed conveying the homestead to her on March 28, 1912, to be read by her, and accounts for his inquiry as to whether that suited her. This deed was one of several that Cloyd executed on that day as a part of a scheme to effect a family settlement and to arrange for a conveyance of all of his property to his several children, to take effect upon the death of both himself and his wife. It is apparent that it was not his intention that the deeds should be delivered or should become effective at that time. His intention was clearly disclosed in the statement he made to Galligan and McNamara that he did not intend to deliver the deeds until some future time to be determined by him. While, of course, if the deed to Mrs. Geathard, or any of the deeds executed at that time, did become effective Cloyd had no power to make any further disposition of the property, the fact that he did thereafter devise another scheme for a settlement of his property upon his children and executed other deeds, taken in connection with the testimony as to his expressed intention at the time he executed the first set of deeds, indicates that it had never been his intention to deliver any of the first set of deeds at the time of their execution. That he understood the force and effect of the delivery of a deed is evident from the inquiry he made of Galligan, the advice he received at that time, the statement he made to Galligan, and the fact that he did deliver the second set of deeds immediately after they were executed and recorded. When all the surrounding circumstances are taken into consideration it is evident that Cloyd did not intend to make a delivery of the deed to Mrs. Geathard, but that he handed it to her to read in order to satisfy her

that her objection to the prior deed made by him had been removed.

We are of the opinion that the deed to Mrs. Geathard was never delivered, and therefore the decree of the circuit court is affirmed.                                    *Decree affirmed.*