Appeal from Fourth District

## GEE et al. v. BAUM et al.

No. 3571.  Decided May 19, 1921.  Rehearing Denied July 20, 1921.
(199 Pac. 680.)

1. APPEAL AND ERROR—FINDINGS IN EQUITABLE ACTION ON CONFLICT-
   ING EVIDENCE NOT DISTURBED UNLESS CLEARLY AGAINST EVIDENCE.
   The Supreme Court on an appeal in an equitable action will
   consider questions of fact as well as questions of law, but will
   not disturb findings of fact where the evidence is conflicting,
   unless it is made to appear that the findings are clearly against
   the evidence, or that the presumptions respecting the correct-
   ness of the findings and judgment have been overcome.[1]

2. TRIAL—FAILURE TO FIND ON ISSUE ON WHICH THERE WAS NO
   EVIDENCE DOES NOT AFFECT VALIDITY OF OTHERWISE CORRECT JUDG-
   MENT. Court's failure to find on issue raised by the pleadings
   on which there was no substantial evidence does not affect the
   validity of otherwise correct judgment.

3. DEEDS—GRANTOR'S STATEMENT TO GRANTEES FOLLOWING EXECU-
   TION OF DEEDS HELD TO NEGATIVE INTENT TO IMMEDIATELY DELIVER
   DEEDS. Grantor's statement to children and grandchildren fol-
   lowing the execution of deeds to them: "Now, boys, I don't
   think I'll deliver these deeds right now; I will keep them a
   while and will let you go on and run the land according to the
   arrangement I have dictated, and pay me one-third of the
   crops you raise, and pay all the taxes and assessments upon
   the property, and if I see fit later I will deliver the deeds" *held*
   to prove that grantor did not intend to deliver the deeds at the
   time, or that they should become effective until a later date.

4. DOWER—WIFE'S STATUTORY ONE-THIRD INTEREST CONDITIONAL ON
   HER SURVIVING HUSBAND. The wife's statutory one-third inter-
   est in the husband's real estate is a mere inchoate interest, de-
   pending entirely upon the condition that she survive the hus-
   band.

5. DOWER—DEED HELD INOPERATIVE AGAINST HUSBAND BECOMES IN-
   OPERATIVE AGAINST WIFE, WHO JOINED HUSBAND MERELY TO
   RELEASE STATUTORY INTEREST. Where husband's deed, in which
   the wife has joined merely to release her statutory interest in
   the event of his death, is held inoperative as against the hus-
   band, it also becomes inoperative as against the wife.

6. STIPULATIONS—PARTIES MAY STIPULATE THAT CERTAIN LAND IS
   NOT TO BE CONSIDERED BY COURT. Where it was stipulated by

[1] *Campbell* v. *Gowans*, 35 Utah 268, 100 Pac. 397, 23 L. R. A.
(N. S.) 414, 19 Ann. Cas. 660; *Savings Bank* v. *Fox*, 44 Utah, 323,
140 Pac. 663.

the parties that a certain tract of land should be eliminated from the action, it was error for the court to include such land within the provisions of the decree.

7. COURTS—DISTRICT COURT ERRED IN DETERMINING HEIRS IN ACTION TO SET ASIDE DEEDS. In an action to set aside deeds, it was error for the district court to determine the heirs of two decedents whose representatives were parties to the action, and whose estates were in the process of administration in another proceeding in the proper court.

On Application for Rehearing.

8. EVIDENCE—COURT REQUIRED TO CONSIDER COUNSEL'S STATEMENT OF RELEVANT FACT, MADE DURING PREVIOUS TRIAL, INTRODUCED AS AN ADMISSION AGAINST CLIENT. Where counsel makes a statement of a relevant fact, which is introduced in evidence upon a retrial of the case as an admission against his client, the court is not only justified in considering such fact, but in justice to the adversary party is bound to do so.

Appeal from District Court, Fourth District, Utah County; *A. B. Morgan,* Judge.

Action by Elias A. Gee, administrator of the estate of George Baum, deceased, and others, against Jacob A. Baum, administrator of the estate of Sarah E. Baum and others. Judgment for plaintiffs, and defendants appeal.

REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.

*J. H. McDonald,* of Provo, and *Dana T. Smith,* of Salt Lake City, for appellants.

*Parker & Robinson,* of Provo, and *Walton & Walton,* of Salt Lake City, for respondents.

FRICK, J.

Elias A. Gee, as administrator of the estate of George Baum, deceased, with others who were made plaintiffs, brought this action against Jacob A. Baum as administrator

of the estate of Sarah E. Baum and others, who were grantees
in the deeds hereinafter referred to, to set aside said deeds of
conveyance, which were signed by said George Baum, de-
ceased, in his lifetime, and by his wife, Sarah E. Baum as
grantors, the title being in said decedent, George Baum.  The
deeds in question are nine in number, and in which the fol-
lowing named persons are named as grantees:  Lafayette
Baum was the sole grantee in two of the deeds, and was a
joint grantee in two other deeds with some of the other
grantees; Jacob A. Baum was the sole grantee in two of the
deeds, and was a joint grantee in two other deeds; David
Wallace Baum was the sole grantee in two of the deeds, and
a joint grantee with others in another of the deeds; Elmer
Baum was the sole grantee in two of the deeds, and a joint
grantee with others in two other deeds.  All of the foregoing
grantees were made parties to this action either in person or
by representation.  George Baum, the grantor, was the father
or grandfather of both the plaintiffs and defendants, except
Elias A. Gee.  The deceased was married three times, and
had a large number of children, of which some were born as
the fruit of each marriage.  Sarah E. Baum was the third
and last wife.  The grantees in the several deeds here in ques-
tion, while they are not all of the children of the last marriage,
nevertheless, are all children born as the fruit of that mar-
riage.  The deeds in question were all signed and acknowl-
edged by the grantors on the 3d day of March, 1912, and were
filed for record on the dates following:  One on January 31,
1914; two on March 2, one on March 3, two on March 7, and
two on March 18, 1914, and one on July 22, 1916.  It will
thus be seen that while the deeds were all signed on October
3, 1912, they were not filed for record until the dates before
stated.

The plaintiffs, in their complaint, in substance, alleged that
the grantor George Baum was the owner of the lands de-
scribed in the deeds, and that Sarah E. Baum, was his wife;
that if the purported deeds were made, they were wrongfully
obtained by undue and improper influence, and that said
George Baum, when said deeds were made, was mentally in-

competent and incapacitated. The defendants filed separate answers to the complaint, in which, after admitting the execution of said deeds, etc., they denied all the allegations relating to the mental incapacity of said George Baum and the allegations respecting undue influence. When the case came on for trial, the court impanelled a jury in an advisory capacity, and submitted to them two questions: (1) Whether the grantor, George Baum, "at the time of the signing of the deeds," was of sound mind and memory; and (2) whether the deeds in question were "obtained by undue influence." The jury answered the first question in the affirmative, and the second one in the negative. A motion for new trial was, in due time, interposed by the plaintiffs, which, for reasons not disclosed, was granted by the district court, and a new trial was ordered. After the new trial was granted, the plaintiffs, by leave of court, filed an amended complaint, in which, after stating the grounds before stated why the deeds should be held invalid, also added another ground, namely, that the same were never delivered, or, if delivery was made, the grantor George Baum was of unsound mind and incapacitated, etc. Defendants denied the allegations of the amended complaint, and the cause came on for trial the second time. The last trial was to the court without the intervention of a jury, which resulted in findings of fact and conclusions of law in favor of the plaintiffs.

The court, among other things, found that "said deeds were not delivered to the defendants, or any of them, until on or about the month of February, 1914; that at the time of the delivery of said deeds the said George Baum was wholly incompetent and unable to transact business of any nature whatsoever, and remained so incompetent and incapacitated until the date of his death," which occurred in July, 1916. The court, as conclusions of law, found that said deeds were invalid; that the same should be set aside; that the record thereof should be canceled, and entered judgment or decree accordingly.

Defendants appeal from the judgment or decree, and in their assignments of error, among other things, assail the

findings of fact, conclusions of law, and the judgment or decree.

The evidence is very voluminous and conflicting. There were 27 witnesses who testified on behalf of the plaintiffs and 20 on behalf of the defendants. In addition to the testimony of the witnesses there is considerable documentary evidence. In that connection counsel for defendants, in their brief, say:

"The testimony is very voluminous and on behalf of both plaintiffs and defendants a great mass of cumulative evidence as to the physical and mental condition of the deceased was introduced."

Notwithstanding this mass of conflicting evidence, counsel ask us to review the same and to set aside the court's findings with respect to the delivery of the deeds and the mental condition of the deceased at the time when the alleged delivery thereof was made. The practice is now well settled in this jurisdiction that in view that a party to an action in equity may appeal upon questions of fact as well as of law, therefore, on questions of fact, the appellant is entitled to the judgment of this court as to whether the findings of the trial court conform to the evidence. See *Campbell* v. *Gowans,* 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660, and *Savings Bank* v. *Fox,* 44 Utah, 323, 140 Pac. 660. It is, however, for the reasons stated in those cases, equally well settled that in case the evidence is conflicting, and unless it is made to appear "that the findings are clearly against the evidence," or that "the presumptions respecting the correctness of the findings and judgment" have been overcome, this court will not set aside the findings. The foregoing propositions have so often been stated by this court that it would be a work of supererogation to refer to the numerous cases in which the statements are made.

The reason for the rule must be apparent to all. The trial court has the opportunity to both hear and see the witnesses and to observe their demeanor while testifying. That court, therefore, is in a better position to judge the weight that should be given to the testimony of the witnesses in case of

conflict or disagreement amongst them respecting any material fact concerning which they testify.

In view that the witnesses are very numerous and their testimony respecting the mental condition of the grantor Baum is in sharp conflict and apparently irreconcilable, this court should not interfere with the findings of the district court unless it is made to appear that the findings are clearly against the weight of the evidence. In view of the record in the case at bar, it would be a mere waste of time and space to set forth the evidence. If that were done, one reader might well, for reasons satisfactory to himself, draw one conclusion, while another, for like satisfactory reasons, might deduce another and perhaps an opposite conclusion upon the question whether the grantor Baum was or was not incompetent when the deeds were delivered. As we have already pointed out, this is the only question upon which the court made a special finding. If that finding is sustained by the evidence and is not clearly against the weight thereof, as before explained, the question of whether the grantor Baum was or was not incompetent when the deeds were signed is immaterial. Then, again, there was no substantial evidence produced upon the issue of undue influence, and, therefore, while the court might well have made a negative finding on that issue, and perhaps under the practice in this jurisdiction, should have done so, yet the mere fact that no finding upon that question was made will not make the judgment erroneous if it be otherwise correct. We are therefore bound by the court's findings that the deeds were not delivered until in the early part of the year 1914 and that when delivered the grantor Baum was mentally incompetent.

We desire to state here, however, that if we were permitted to determine the question upon the evidence alone, whether the deeds were delivered by the grantor Baum to the grantees at the time when they were executed, we should feel inclined to hold that in view of all the circumstances and the nature of the transaction the evidence would justify a finding that the grantor Baum intended that the conveyances should take

effect from the time he executed the deeds and that while there was no actual surrender of possession by him at that time, nevertheless, there was a sufficient constructive delivery to uphold the conveyances as matter of law. What has been said, however, is based upon the assumption that the grantor Baum intended the conveyances to take effect immediately after he had made known to the grantees that he had executed the deeds and had shown them to the grantees and had asked them if the conditions imposed were satisfactory to them. We, however, deduce such intention of the grantor entirely from what occurred and what was said at that time. One of the defendants' counsel, however, by a statement made in open court during the trial, has dispelled the inference that we deduce as aforesaid, namely, that the grantor Baum had intended the conveyances to be effective from the time aforesaid, by repeating the statement which he said was made by the decedent at the time. The statement of counsel, as aforesaid, is made a part of the bill of exceptions, is insisted upon by plaintiff's counsel, and is as follows:

"'Now, boys, I don't think I'll deliver these deeds right now; I will keep them a while, and will let you go on and run the land according to the arrangement I have dictated and pay me one-third of the crops you raise and pay all the taxes and assessments upon the property, and if I see fit later I will deliver the deeds.'"

Counsel then proceeded:

"So, at the end of two years from that time he delivered those deeds and in the meantime the boys went on," etc.

The foregoing statement is clear and decisive that the grantor Baum did not at that time intend to deliver the deeds, and did not intend the conveyances to become effective until at some later date. The grantor thus retained the deeds in his possession from October, 1912, when they were signed, until the early part of 1914, at which time, as we have seen, the court found that he was mentally incompe-     3
tent to make a delivery. Assuming, as we must, that the foregoing statement correctly reflects the intention of the grantor, we are precluded from following our own deductions from the facts and circumstances respecting the grantor's in-

tention.  His intention being conceded to have been against making a delivery at the time the deeds were made and the transaction between him and the grantees took place, we are bound to assume that the grantor did not intend to make the grants effective at that time.  The findings of the court that the deeds were not delivered until 1914, and that at that time the grantor was incompetent to make delivery, must therefore prevail.

The defendants, however, insist that the court erred in setting aside the deeds and in holding them of no effect in so far as they conveyed the one-third interest of Sarah E. Baum, their mother and the wife of 'the decedent, who died before the case was tried the last time.  It is contended that although the deeds, so far as their father is concerned, be held invalid upon the ground of his mental incapacity, yet, in so far as the mother's one-third interest is concerned, in view that she never questioned the validity thereof, the deeds should stand.

While it is true that under our statute dower by that name is abolished and the' wife takes one-third of her husband's real estate in fee if she survive him, yet, unless she does survive him, she has no interest in his real estate.     4
The interest of the wife, although in fee, is, nevertheless, a mere inchoate interest, and depends entirely upon the condition that she survive her husband.  In joining with him in a deed of lands to which he holds the legal.title she therefore merely releases her inchoate right, and is not a grantor in the sense that she is the owner, or joint owner, of the title conveyed.  The overwhelming weight of authority is to the effect that if the wife joins in a deed with her husband to release her dower right and the husband's deed is set aside for any reason, then the wife has the same rights in the lands that were attempted to be conveyed by the husband as though the conveyance had not been made.  The rule is well and tersely stated in Scribner on Dower (2d Ed.) § 49, at page 313, in the following words:

"A wife who joins with her husband in a conveyance of his lands is not a party thereto except for the purpose of relinquishing

her dower. She is not to be regarded as alienating a real subsisting estate, but as releasing a future contingent right. Her renunciation of dower is to attend the conveyance of her husband; to endure while that endures, and no longer. Hence, if the conveyance of the husband be inoperative, or if it be set aside, or avoided, the right of dower remains unimpaired."

In *Frederick* v. *Emig*, 186 Ill. 319, 57 N. E. 883, 78 Am. St. Rep. 283, the Supreme Court of Illinois, in referring to the capacity in which a wife acts in joining with her husband in conveying his lands, in the course of the opinion, said:

"She was a party to the deed only for the purpose of releasing her dower, and her right to dower could not be separated from the principal estate, so that when the deed became inoperative as against creditors to convey the estate of her husband, it became inoperative to release or bar her right to dower. As against creditors, the deed conveyed no estate of the husband, and in such a case a deed is not allowed to operate to release or bar the dower, but the wife may assert it after the death of the husband."

In *Elmendorf* v. *Lockwood*, 57 N. Y. 325, the court said:

"During coverture, the wife's inchoate right of dower is incapable of being transferred or released, except to one who has already had, or by the same instrument acquires, an independent interest in the estate. Hence, when the deed of the husband is for any reason void, or is set aside or superseded, so as to become inoperative, the wife's dower, although she joined in the conveyance, is not barred."

To the same effect is *Malloney* v. *Horan*, 49 N. Y. 111, 10 Am. Rep. 335. In *Re Lingafelter*, 104 C. C. A. 38, 181 Fed. 24, 32 L. R. A. (N. S.) 103, the question is very thoroughly considered. It was there contended, as it is here, that although the husband's conveyance became inoperative, the grantee, nevertheless, obtained the wife's interest in the lands attempted to be conveyed by the husband. The court, after reviewing many cases, held that in view that the husband's deed was wholly inoperative the wife's rights in his lands remained the same as though no conveyance had been made, and that on his death she was entitled to assert her rights as against the grantees in the conveyance, which was held invalid. Many cases are there collated which it is not necessary to refer to here.

A moment's reflection will, we think, convince any one that the foregoing doctrine is entirely sound. Under our statute

a wife's interest is not subject to her husband's general debts. If, therefore, the husband should make a deed, in which the wife joined, to one of his creditors, in payment of a debt, and the deed were subsequently held invalid for any reason, if the creditor could, nevertheless, enforce the same as against the wife, he could compel her to pay her husband's debts against her will, and thus obtain by indirection what the law prevents him from obtaining in a direct proceeding.

We are of the opinion, therefore, that when the deed of the husband in which the wife joins as wife merely is held inoperative as against him, it also becomes inoperative as against her, and that the grantee in such a deed obtains no rights whatever as against the wife.

It is, however, further insisted that the district court erred in its judgment in this: That at the last trial it was stipulated between the respective counsel that a certain parcel of real estate should be eliminated from this action and should not be considered by the court, to wit:

"Commencing at the southeast corner of the southwest quarter of the northeast quarter of section 25, in township 6 south of range 2 east, Salt Lake meridian; running thence north 3.50 chains; thence north 83 degrees west 6.27 chains; thence south 4.20 chains; thence east 6.25 chains to the place of beginning, containing an area of 2.41 acres, together with all water rights, easements and other privileges appertaining thereto."

Notwithstanding the fact that the parcel of real estate above described, and which was included in one of the deeds which was set aside, was, by express stipulation, withdrawn from the consideration of the court, and after the decree had been entered the court's attention was expressly directed to the fact that the parcel aforesaid was included in the decree when it should have been excluded, or should then be excluded, the court, nevertheless, permitted the decree to stand with the parcel included therein. This was manifest error. The error can, however, be corrected without setting aside the whole decree.

Another question is presented by the defendants, which arises as follows: The court found that the plaintiffs other than Elias A. Gee, the administrator of George Baum's estate,

"are the owners of four-ninths (4/9) of said real estate, and the defendants are the owners of two-ninths (2/9) * * * and that the other one-third (1/3) interest in said premises is owned by the parties hereto that are heirs at law of Sarah E. Baum, now deceased.'' The decree follows the foregoing finding. It may be that the respective interests as found and decreed are correct. The district court, however, was not called upon, nor empowered in this proceeding, to determine who are the heirs of the two decedents, nor what their respective interests are. The district court, although clothed with probate jurisdiction, cannot grant relief nor determine questions pertaining technically to probate jurisdiction without a pleading invoking the probate jurisdiction. If the two estates were not in process of administration in another proceeding in the proper court, the findings and decree might well have been made, although the action was one to set aside certain deeds. In view of the fact, however, that the court exercising probate jurisdiction, in the first instance at least, has the sole power and authority to determine     7 who the heirs are, and, further, to determine their interests and to distribute the assets of the two estates to such heirs, the district court sitting as a court of equity, has no right to meddle with such subjects, and should not have attempted to do so.

The heirs of the respective estates have the right to have their interests in such estates determined in the probate proceeding in accordance with our laws of succession, and to have their respective interests distributed to them in accordance with those laws free from any interference. In any case that does not invoke the probate jurisdiction, such a right is not merely technical, but is a substantial one. Any one, or all, of the litigants who may feel aggrieved by the action of the court in the exercise of its probate jurisdiction may appeal to this court, and, if there be any error, may have the same corrected. If this decree should stand, however, then the court in the exercise of its probate jurisdiction is bound to follow the decree, and thus cannot act in accordance with its own best judgment.

The error in the particular just stated, however, will not necessitate the setting aside of all of the findings of fact, conclusions of law, and a reversal of the whole decree. It will, however, be necessary for us to set aside the findings in which the respective interests as before stated are found. That finding is therefore set aside and annulled.

For the reasons stated, the findings of fact, conclusions of law, and the judgment or decree are modified in the particulars and to the extent hereinbefore stated. The cause is therefore remanded to the district court of Utah county, with directions to modify the findings of fact and conclusions of law as hereinbefore indicated, and to also modify the judgment or decree as hereinbefore indicated, and to enter findings of fact, conclusions of law, and judgment in accordance with the views herein expressed. In the particulars that the findings of fact, conclusions of law, and judgment are not modified, they are each and all approved and affirmed. Costs of this appeal to be paid by the parties hereto in equal parts.

WEBER, GIDEON, and THURMAN, JJ., and RITCHIE, District Judge, concur.

CORFMAN, C. J., being disqualified, did not participate herein.

## On Application for Rehearing.

FRICK, J. Counsel for appellant have filed a petition for rehearing in which they contend that this court erred in considering the statement of counsel made in his opening statement at the first trial. In support of their contention they cite *Pietsch* v. *Pietsch,* 245 Ill. 454, 92 N. E. 325, 29 L. R. A. (N. S.) 218, and *Lane* v. *Portland, etc., Co.,* 58 Or. 364, 114 Pac. 940.

The cases cited above have no application here. In those cases judgments were directed, based entirely upon the opening statements of counsel, and without other evidence. That, it was held, was improper under the circumstances in those cases. Not so here. Here counsel stated some specific facts

in his opening statement which were not essential to that statement. Upon the second trial the facts so stated were introduced in evidence by respondent as an admission of fact, and no objection wás urged to the admission of the facts in evidence. Upon what theory counsel can now urge error because a statement of fact relevant to the issues which is made . in open court is considered against their clients we are at a loss to understand. Moreover, the statement was made a part of the bill of exceptions without objection.

Where, as here, counsel makes a statement of a relevant fact which is introduced in evidence upon a retrial of the case as an admission against his client, the court is not only justified in considering such fact, but, in justice to the          8 adversary party, is bound to do so. There are numerous cases which hold that the opening statements of counsel may be considered. See 1 Thompson on Trials (2d Ed.) § 269.

The further contention that this court erred in holding that, where a deed of the husband, for some good and legal reason, is held inoperative, the wife, by signing such deed, has in no way affected her dower right, is clearly without merit. No authority is cited which is contrary to our holdings, and we think none can be found. The decisions of the courts are based upon the principle that in view that the title is in the husband, and that the wife merely joins in the deed to divest herself of an inchoate and not a vested right, then if the deed of the husband is void and of no force or effect no effect can be given to the wife's act in joining in her husband's deed. This is not a case where two owning title in common join in a deed, and where the act of one only is held void. Here the wife joined for a specific purpose merely, and not as a part owner.

The petition for a rehearing should be, and it accordingly is, denied.


WEBER, GIDEON, and THURMAN, JJ., and RITCHIE, District Judge, concur.