## SINGLETON v. KELLY et al.

No. 3870.   Decided December 22, 1922.   Petition for rehearing denied February 6, 1923.   (212 Pac. 63.)

1. DEEDS—RESERVATION OF LIFE ESTATE IN DEED RAISES PRESUMPTION OF INTENT TO MAKE IMMEDIATE TRANSFER.   The reservation of a life estate in a deed raises a presumption of an intention on the part of the grantor to make an immediate transfer.

2. DEEDS—REDELIVERY WILL NOT DIVEST GRANTEE'S TITLE.   Upon delivery of a deed, the transaction becomes complete, and the grantee's title is not divested by a redelivery.

3. ACKNOWLEDGMENT—DEEDS—ACKNOWLEDGMENT AND RECORDING NOT NECESSARY AS BETWEEN PARTIES.   As between the parties a deed is good when signed and delivered, and acknowledgment and recording are not essential.

4. DEEDS—DELIVERY TO GRANTEE IS NOT COMPLETE DELIVERY IF PARTIES BELIEVE SOMETHING FURTHER MUST BE DONE.   When a deed was, after signing, delivered by grantor to grantee, this was not an unconditional and final delivery, if both parties thought the deed was of no effect between them until after acknowledgment and recording.

5. DEEDS—WRITTEN INSTRUCTIONS TO NOTARY HELD TO SHOW INTENT NOT TO DELIVER DEED UNCONDITIONALLY.   Where a deed was left with officer taking acknowledgment with written instructions to deliver it to the grantee after grantor's death "re-

serving, however, the right to withdraw or change same during my life," *held* that finding that there was no absolute delivery was proper.

6.   DEEDS—EVIDENCE—CONSTRUCTION OF WRITTEN INSTRUCTIONS DE-
POSITED WITH DEED IS QUESTION FOR THE COURT; STATEMENTS OF
GRANTOR INADMISSIBLE TO VARY WRITTEN INSTRUCTIONS.   When
written instructions as to delivery are deposited with a deed,
the effect of the transaction depends on the construction of the
writing, and becomes merely a question of law, upon which
*anything* grantor may have said expressive of his intent or
wishes is immaterial.

7.   DEEDS—EVIDENCE HELD NOT TO SHOW DELIVERY.   Evidence that
grantor delivered a blank deed signed by him to bank clerk,
who handed it to a notary public, who filled in the blanks ac-
cording to directions left with the bank clerk by grantor, and
added an acknowledgment and handed the deed to grantor's
confidential advisor, *held* not to show delivery to grantee or to
the grantor's advisor for him.

8.   DEEDS—DEED IRREVOCABLY DEPOSITED WITH THIRD PARTY DELIV-
ERABLE TO GRANTEE UPON GRANTOR'S DEATH PASSES PRESENT
TITLE.   A deed to property placed in the hands of another than
the grantee to be delivered to grantee upon the death of the
grantor, will effectually pass a present title to the property if
the grantor intends such delivery to be absolute and irrovo-
cable, though it is ineffective if a right of dominion or revoca-
tion is retained by the grantor.[1]

9.   DEEDS—INTENTION OF GRANTOR IMMATERIAL WHEN DEED UNDE-
LIVERED.   One may have an intention to convey his property to
another, but, unless the deed is delivered to the grantee or
someone else for him, title cannot pass, and the undelivered
deed is a nullity.

10.   APPEAL AND ERROR—LOWER COURT'S DECISION WILL STAND UN-
LESS EVIDENCE PREPONDERATES AGAINST IT.   Unless the evidence
clearly preponderates against the lower court's findings, its de-
cision must stand.[2]

[1] *Wilson* v. *Wilson*, 32 Utah, 169, 89 Pac. 643.

[2] *Gee* v. *Baum*, 58 Utah, 445, 199 Pac. 680; *Hargreaves* v. *Burton*,
59 Utah, 575, 206 Pac. 262; *Turnbull* v. *Meek*, 58 Utah, 23, 196 Pac.
1008, *Rockhill* v. *Creer*, 56 Utah, 119, 189 Pac. 668; *Crum* v.
*Reynolds*, 55 Utah, 384, 186 Pac. 100; *Rieske* v. *Howard et al.*, 53
Utah, 87, 177 Pac. 228.

Appeal from District Court, Fourth District, Utah County; *Elias Hansen,* Judge.

Suit by Thomas Singleton, as administrator of the estate of Wm. E. Kelly, deceased, against Thomas S. Kelly and another. From a decree for plaintiff, defendants appeal.

AFFIRMED.

*P. C. Evans* and *Ray T. Elsmore,* both of Salt Lake City, for appellants.

*O. W. Moyle,* of Salt Lake City, for respondent.

WEBER, J.

Plaintiff is the administrator of the estate of Wm. E. Kelly, who died intestate in July, 1920. It is alleged in the complaint that at the time of his death and for many years prior thereto he was the owner and in possession of about 30 acres of land in Utah county. It is further alleged that on July 29, 1920, after the death of said deceased, the defendants caused to be recorded a certain deed purporting to be made by Wm. E. Kelly to defendant Thomas S. Kelly, conveying to the latter the property described in the complaint, and that such deed was never delivered to defendants, or either of them, and never became a valid deed. The answer admits that defendants claim to be the owners of the land by reason of the deed referred to in the complaint, but denies that it was not delivered, and also alleges that in 1914 the deceased, Wm. E. Kelly, conveyed the land in dispute to Thomas S. Kelly by warranty deed. The district court found the issues in favor of plaintiff. Conclusions of law were entered in accordance with the findings of fact, and a decree was rendered quieting title to the land in plaintiff. Defendants appeal.

The only question is as to the delivery of the deeds referred to in the pleadings. If either deed was delivered,

the judgment must be reversed, and the appellants, who were defendants below, are entitled to be declared the owners of the property described in the complaint.

First, as to the 1914 deed: As claimed and stated by counsel for appellants, the facts were:

"Appellant Thomas S. Kelly, grantee in said deeds, is the only full brother of decedent Wm. E. Kelly, grantor in said deeds. Decedent had about 25 other relatives of the half blood. On May 16, 1914, decedent with his brother Tom (defendant Thos. S. Kelly) went to the home of E. A. Henroid, who was then county surveyor and conveyancer. Decedent stated to Henroid that he wanted a deed made out, conveying the land in question to his brother Tom, but reserving a life estate to himself. Henroid asked decedent what he wanted to do that for and decedent answered that he wanted to convey his lake land to his brother Tom. Henroid then made out the deed, and checked the description with an old deed brought for that purpose, and decedent signed the deed, and Henroid signed as a witness. Henroid then handed the deed to decedent, who, in Henroid's presence, handed the deed to appellant Thomas S. Kelly."

That Wm. E. Kelly, after signing the deed, handed it to Thomas S. Kelly, and that the parties then left Henroid's place is undisputed. Standing alone, this would indicate delivery. In favor of the claim of Thomas S. Kelly is also the fact that in the deed the grantor reserved a life estate. Such a deed raises a strong presumption of an intent to make an immediate transfer "for the reason that, **1** if such intention had not existed, there would be no reason for such reservation." 18 C. J. 414; 18 R. C. L. 997; *Riegel* v. *Riegel*, 243 Ill. 626, 90 N. E. 1108; *German-American Nat. Bank* v. *Martin*, 277 Ill. 629, 115 N. E. 721. However, it is held in *Sample* v. *Geathard*, 281 Ill. 79, 117 N. E. 718, that the presumption is applied only where there are no circumstances showing that the grantor did not intend the deed to operate immediately. Delivery being the final act of consummating a deed, if there was a delivery the transaction was completed, and the grantor's title could not be reinvested by a redelivery of the deed to him. If there were no facts other than those mentioned, the delivery and consequent validity of the deed of 1914 would be beyond question.

But there is other testimony to consider. Henroid, the scrivener who prepared the first deed, informed the parties that the deed must be acknowledged. He also warned them of the danger of delaying the recording of the deed. He testified:

"Well, William E. Kelly came to me with his brother Tom, and asked me to convey to his brother Tom the property that he owned in the bottoms next to the lake; * * * asked me to make a conveyance, a deed, to his brother Tom of all the land that he owned * * * in the bottoms near the lake, and, not knowing what the conditions were, and being intimately acquainted with the family, and with the boys, I turned to William, and asked him what he wanted to do that for. Took liberty with them, for I was well acquainted with them. * * * He said he wanted to convey to his brother Tom, and at the same moment his brother Tom turned to me and said, 'Mr. Henroid, he is not conveying this gratis; * * * he wants to keep a life interest in this.' That satisfied me. So he handed me his original deeds, and from them I instructed him at the time, though, that I was no longer a notary public. I believe they came to my house believing I was still a notary public, but I told them that my commission expired, and in case it was made he should have to go to another notary public for him to acknowledge their signature, and so forth. When this was understood I made the deed, copied it simply from the original, and handed the original to Thomas Kelly, and, holding the copy, I checked the copy with the original. * * * And after making the copies I handed them to William Edward, and asked him to sign the copy, which he did, and before handing the deed back to him I told him that it would be necessary for him to go before a notary public for him to acknowledge the deed. They agreed to do this so he signed the deed. I took the deed back, witnessed the signature myself, and handed the deed back to him, that is, to William Edward Kelly, and William Edward Kelly handed the deeds to his brother Tom in my presence. That closed the transaction. * * * Q. Mr. Henroid, when the deed was signed by Mr. William E. Kelly and handed to his brother Tom, as you have testified, * * * it wasn't then complete, was it? You had told them that they would have to go before a notary public and fix it up? A. Yes; that is right. Q. And they contemplated doing it? A. It was complete as far as the copy was concerned, and so forth, but otherwise it wasn't complete. Q. And they understood they would have to go before a notary public before they could have it delivered— A. That is right. * * * Q. You explained to them fully that—the necessity for putting a deed on record, if it was to be an absolute, binding deed, didn't you? A. Oh, yes, yes. Well, so far—it wasn't so far as being absolute a deed,

my friend, but it was in order to secure the title to themselves, not because it would be—make an absolute deed, but because it would secure them as against other parties. That is the idea that I gave them. Q. You explained to them fully that it was quite important to have it recorded, didn't you? A. Yes."

While Mr. Henroid was mistaken as to the law, and the deed was good as between the parties when signed and delivered, both grantor and grantee doubtless thought the deed of no effect until after acknowledgment and    **3, 4** recording, Mr. Henroid testified that they "understood they would have to go before a notary public before they could have it delivered." If the parties had that in mind, was it an unconditional and unqualified delivery? In *Kenney* v. *Parks,* 137 Cal. 527, 70 Pac. 556, the facts were that a wife gave her husband a deed under the belief that it would not be valid until recorded. He recorded it, nevertheless, and in a suit by the wife to recover the property it was held that the delivery was not valid. See, also, *Stone et al.* v. *Daily,* 181 Cal. 571, 185 Pac. 665.

On May 19, 1914, or as counsel for respondent says, on May 16, 1914, the grantor and grantee went to Mr. James H. Clark to have the deed acknowledged. After he had taken the acknowledgment, Clark asked the deceased whether he was turning the deed over to Thomas S. Kelly then, or whether he expected him to have it after his death. Wm. E. Kelly, the deceased, replied: "I mean to keep control of it while I live." Thereupon Mr. Clark, in the presence of the deceased and Thomas S. Kelly, wrote a letter of instructions, addressed to James H. Clark and signed by the deceased, Wm. E. Kelly, as follows:

"I herewith deliver with this a warranty deed, made and executed the 16th day of May, A. D. 1914, for lands in Sec. 36 and 35, township 5 south of one east, Salt Lake meridian, favor of Thomas S. Kelly, and I hereby expressly instruct the said James H. Clark, or any one to whom these presents may come, to deliver the same at my death to the said Thomas S. Kelly, or his heirs, reserving, however, the right to withdraw or change same during my life."

Was the above writing part of the transaction? The trial court held that it was, and that what was

done before Clark was a continuation of what was done in the presence of Henroid.

The 1914 deed remained in Clark's possession till July 19, 1920. At that time Wm. E. Kelly appeared in Mr. Clark's office and said:

"I want to change the deed I left with you, I want to deed part of it to Mrs. Tom Redmond."

Clark no longer being a notary public, he took Kelly to a notary public at the People's State Bank, where Kelly signed two deeds in blank. The notary public was not at the bank, and the blank deeds, signed by Kelly, were left in the notary's office. Later on the 1914 deed was returned to Clark with the second deed. Taking all the testimony in relation to the 1914 deed into consideration, and giving due weight to the presumption in favor of the findings of the trial court, we cannot say that the findings made by the trial court are against the weight of the evidence. As to the 1914 deed, all the instructions were in writing. While there was evidence proving that Wm. E. Kelly          6 intended that his brother should have the land after the grantor's death, the writing in evidence proves conclusively that the grantor did not intend the deed as absolute and unconditional.

"When the only instructions are in writing the effect of the transaction depends on the construction of the writing, and becomes a pure question of law, upon which anything said by the grantor to other persons expressive of his intentions and wishes is immaterial." 8 R. C. L. p. 997, citing *Moore* v. *Trott*, 156 Cal. 353, 104 Pac. 578, 134 Am. St. Rep. 131.

As to the deed of July 19, 1920, the evidence in substance shows that Wm. E. Kelly went to the office of James H. Clark on that date, and informed Clark that he wanted to change the deed which had been left with him; that he wanted the deed part of it to Tom Redmond and Mrs. Tom Redmond. Clark demurred to the suggestion, but Kelly stated he had the right to make the change, and it was his desire to do so; that he wanted "to make a deed to Mrs. Tom Redmond for the piece that runs up from the bottom." Clark informed Kelly that his notary public commission

had expired, and that it would be necessary to go before a notary to have the work done. They took the deed and the letter of instructions, and went together to the People's State Bank to find a notary public. The notary was not in, but his assistant was there and Kelly, with the assistance of Clark, explained just what he wanted. Kelly said:

"I want to deed a piece of this ground to Mrs. Redmond. I don't want to wait here." He was sick at the time and seemed to be in a hurry. Two blank deeds were obtained and Kelly signed his name to each. He repeated he was sick and didn't know whether he was going to be there long. He left the blank deeds in the bank. The blanks were not filled out when Clark left there. Clark did not know whether it was before or after they left the bank that the deed was returned to him, but his best recollection was that the deed was given to him after Kelly's death. He never saw Kelly after they left the bank. He gave the deed to Thomas S. Kelly soon after Wm. E. Kelly's death.

To briefly recapitulate: The deed of 1920, signed in blank by Wm. E. Kelly, was delivered in blank to the bank clerk; by him it was handed to the notary public who filled the blanks and added an acknowledgment, and by the notary handed to Clark. If the notary had been at the bank when Wm. E. Kelly went there, what would the grantor have done with the deed? No one knows. Would he have delivered it to Thomas S. Kelly? Would he have deposited it with Clark, with instructions to deliver it to the grantee therein named after the death of the grantor? Would he have instructed Clark to destroy the written instructions, or would he have given it to Clark with the same instructions that applied to the other deed that had been left with Clark? No one knows. Not a word was said by Kelly to any one as to what was to be done with the deed. Let it be assumed that he intended to deposit it with Clark for delivery to Thomas S. Kelly after the grantor's death. If any presumption obtains, it is that this deed was to take the place of the other and under the same conditions and instructions that applied to the deed of 1914. The record contains no     7

evidence to indicate that Wm. E. Kelly ever returned to the bank where the blank deeds were left, no evidence that he ever saw them again, or that he acknowledged their execution, except as acknowledgment is presumed from the notary's certificate, no evidence that he ever authorized delivery to Thomas S. Kelly or to any one else. The record, however, does contain affirmative evidence to the effect that Wm. E. Kelly left American Fork for the Uinta Basin on the same day that he signed the deeds, and that he never saw the notary public to acknowledge the deeds, and, never in any way communicated with the notary public.

The law here applicable is clearly stated in *Williams* v. *Kidd*, 170 Cal. 631, 151 Pac. 1, Ann. Cas. 1916E, 703, from which we quote:

"It is well settled that a person may make a conveyance of property and place it in the hands of a third party to be delivered to the grantee named in it on the death of the grantor, and that such a delivery will be effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond the power thereafter to revoke or control the deed. Where delivery is made under these circumstances and with this intention, it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property and the third party or depositary holds the deed as a trustee for the grantee named in it. *Bury* v. *Young*, 98 Cal. 451, 35 Am. St. Rep. 186, 33 Pac. 338; *Moore* v. *Trott*, 156 Cal. 353, 134 Am. St. Rep. 131, 104 Pac. 578.

"On the other hand, it is equally well settled that where a deed is deposited with a third party to be handed to the grantee on the death of the grantor, unless this is accompanied by an intention on the part of the grantor that title to the property shall thereby immediately pass to the grantee, there is no delivery of the deed and consequently no title is transferred. If the deed is handed to the depositary without any intention of presently transferring title, but, on the contrary, the grantor intended to reserve the right of dominion over the deed, and revoke or recall it, there is no effective delivery of the deed as a transfer of title. So, too, if it be the intention of the grantor when he deposits a deed that it shall only be delivered to the grantee by the depositary after the death of the grantor, and that the title is to vest only upon such delivery after his death, then the deed is entirely inoperative as constituting an attempt by the grantor to make a testamentary disposition of his property. This may only be done by will executed as required by

the law of wills of this state, and a deed, the purpose of which is intended to be testamentary, cannot be given effect."

See, also, *Wilson* v. *Wilson,* 32 Utah, 169, 89 Pac. 643.

Counsel for appellant say that it is a cardinal rule that courts will carry out the grantor's intention wherever this is possible. That is true, but without any evidence of delivery it can be of no importance whatever what the intentions of the grantor in this case were. One may have an intention to convey his property to another, but unless the deed is delivered to the grantee or someone for him title cannot pass, and the undelivered deed is a nullity.

"Whether, in a given case, the delivery of a deed, to a third party to be delivered by him to the grantee after the grantor's death is to be deemed a delivery in præsenti or not is generally a question of fact, depending on the conduct and intention of the parties to such transactions. * * * The grantor must deliver the deed to a third person for the use of the grantee, and in some way express his intention to that effect." *Fine* v. *Lasater,* 110 Ark. 425, 161 S. W. 1147, Ann. Cas. 1915C, 385, 8 R. C. L. 995.

We think the inferences which the trial court deduced from the evidence were reasonable, and that the findings of fact are not against the weight of the evidence. Unless the evidence clearly preponderates against the finding as made by the lower court its decision must stand. *Gee* v. *Baum,* 58 Utah, 445, 199 Pac. 680; *Hargreaves* v. *Burton,* 59 Utah, 575, 206 Pac. 262; *Turnbull* v. *Meek,* 58 Utah, 23, 196 Pac. 1008; *Rockhill* v. *Creer,* 56 Utah, 119, 189 Pac. 668; *Cram* v. *Reynolds,* 55 Utah, 384, 186 Pac. 100; *Rieske* v. *Hoover, et al.,* 53 Utah, 87, 177 Pac. 228.

Instead of being clearly against the decision of the trial court the evidence supports the judgment which is hereby affirmed, with costs to respondent.

CORFMAN, P. J., and WEBER, GIDEON, and FRICK, JJ., concur.